**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICKEY LEE VANDERPOOL,          :
                                :   Civil Action No. 07-3193 (JLL)
          Petitioner,           :
                                :
     v.                         :   **OPINION**
                                :
BERNARD GOODWIN, et al.,        :
                                :
          Respondents.          :

**APPEARANCES:**

Petitioner pro se                  Counsel for Respondents
Mickey Lee Vanderpool              David L. DaCosta
Special Treatment Unit             Deputy Attorney General
3035 Hackensack Avenue             25 Market Street
P.O. Box 699                       P.O. Box 112
Kearny, NJ 07032                   Trenton, NJ 08625

**LINARES**, District Judge

   Petitioner Mickey Lee Vanderpool, a civilly-committed mental patient currently confined at the Special Treatment Unit in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Bernard Goodwin and the Attorney General of the State of New Jersey.

   For the reasons stated herein, the Petition must be dismissed.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> M.L.V. was convicted in 1976 of rape while armed.  He also was convicted of breaking and entering with intent to steal while armed.  Several sentences were imposed for those convictions, including an indeterminate term of up to 30 years for the rape.  M.L.V. was incarcerated at the [Adult Diagnostic Treatment Center].  M.L.V. escaped from that facility on August 24, 1979.  He was captured one month later; however, while he was at large, M.L.V. committed a robbery, for which he was convicted and sentenced to a twelve-year custodial term, to run concurrently with the previously imposed sentences.  M.L.V. also was convicted of escape and sentenced to a term of two to three years, consecutive to the sentences M.L.V. was then serving.  On March 16, 1993, M.L.V. was paroled.
>
> In 1995, while he was on parole, M.L.V. picked up a hitchhiker who he said offered to perform certain sex acts for money.  M.L.V. agreed and paid the woman in advance.  However, the woman refused to perform a sex act and refused to return a portion of the money, claiming that she dropped the money outside the building where M.L.V. had taken her.  M.L.V. tied the woman to a chair and went outside to look for the money.  The woman managed to escape and called the police.  The charges arising from this incident were reduced to simple assault and M.L.V. pled guilty.  He was sentenced to six months in the county jail.  Although M.L.V. had violated the conditions of parole, the Board did not revoke M.L.V.'s parole.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

On October 8, 1997, M.L.V. was arrested for soliciting a prostitute, who was an undercover police officer. M.L.V. pled guilty on October 14, 1997 and was fined. The Board issued a parole warrant and M.L.V. was returned to custody. On November 26, 1997, a panel of the Board revoked M.L.V.'s parole and referred him for an evaluation pursuant to State v. Dalonges, 128 N.J. Super. 140 (App.Div. 1974).

In Dalonges, we established a three-part test for revocation of the parole of persons convicted under the former Sex Offender Act (SOA), N.J.S.A. 2A:164-3 to -13 (repealed by L. 1978, c. 95):

> [T]he parole of a sex offender cannot properly be revoked unless the reason for revocation is based at least in part upon the finding by the Parole Board and based on a determination by the [ADTC] founded on adequate medical reasons, that defendant's violation of parole reflects emotional or behavioral problems as a sex offender and evidences that he is incapable of making any acceptable social adjustment in the community because of such problems and in fact requires further specialized treatment as mandated by N.J.S.A. 2A:164-5.
>
> [Id. at 148-49.]

The Dalonges test was codified by the Department of Corrections in its administrative regulations. See N.J.A.C. 10A:71-7.19.

M.L.V. was evaluated by Kenneth L. McNeil, Ph.D. (McNeil), who rendered two reports addressing the Dalonges factors. McNeil's report was forwarded to the Board panel and on August 19, 1998, the panel re-affirmed its decision to revoke M.L.V.'s parole. M.L.V. did not file an administrative appeal from the panel's decision until November 10, 2000; however, the Board agreed to entertain the appeal even though it had not been submitted within 180 days of the inmate's receipt of the decision, as required by N.J.A.C. 10A:71-4.3(a). By decision dated July 25, 2001, the full Board affirmed the panel's determination to revoke parole.

M.L.V. appealed and we remanded to the Board for reconsideration. <u>M.L.V. v. N.J. State Parole Board</u>, A-5103-00T3 (September 30, 2002) (slip. op. at 7). We noted that McNeil had not squarely addressed the three prongs of the <u>Dalonges</u> test and his conclusions were marred by certain inconsistencies as well as by his conclusory finding that the second part of the test, capability of social adjustment in the community, had not been met. <u>Id.</u> at 6.

. . .

We ordered that M.L.V. be reevaluated by a different mental health professional. <u>Id.</u> at 7-8.

Following our remand, M.L.V. was examined by Mark Frank, Ph.D. (Frank), who rendered a report in which he addressed the <u>Dalonges</u> factors. Frank concluded that the 1997 incident in which M.L.V. solicited a prostitute was reflective of his emotional or behavioral problems problems as a sex offender. However, Frank found that the evidence did not establish that M.L.V. was incapable of making an acceptable social adjustment in the community. Frank further found that M.L.V. required additional specialized treatment as a sex offender but he did not require continued custodial supervision. Based on Frank's report, the Board issued a decision dated January 22, 2003 reinstating M.L.V.'s parole upon the submission by M.L.V. of a community plan and acceptance of the same by the Board.

In conformity with its usual procedures, M.L.V. was evaluated at the ADTC prior to his release. In a "termination report" dated March 27, 2003, Emili Rambus, Psy.D. (Rambus), stated that M.L.V.'s score on the Static 99 indicated that he was at high risk for sexual reoffending and his score on the MnSOST-R suggested a moderate risk. Rambus said that the high score on the Static 99 was mitigated by M.L.V.'s therapeutic progress and the "strict requirements" of his parole supervision. Rambus concluded that, from a clinical viewpoint, continuation on parole was appropriate.

However, on April 1, 2003, the ADTC Institutional Release Committee (IRC) reviewed the matter and determined that M.L.V. should not be released. He was

4

referred for psychiatric screening for possible civil commitment based on his high score on the Static 99 and his offense history. The Civil Commitment Review Committee (CCRC) at the ADTC concurred in the decision to refer M.L.V. for psychiatric screening. On April 2, 2003, the Board placed an administrative hold on M.L.V.'s parole release because he was being considered for commitment and there was a need to review new information not previously considered.

On April 21, 2003, psychiatrist Howard Gilman, M.D. (Gilman) executed a clinical certificate in which he diagnosed M.L.V. as suffering from sexual sadism and anti-social personality disorder. Gilman stated that M.L.V. suffers from a mental abnormality , as defined in the Act, or personality disorder, that makes him likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment. Gilman stated that in his opinion, M.L.V. has serious difficulty controlling his sexually inappropriate impulses and there is a significantly elevated risk that he will sexually reoffend.

On April 22, 2003, psychiatrist Lawrence A. Siegel, M.D. (Siegel) executed a clinical certificate in which he diagnosed paraphilia, not otherwise specified (NOS), probable sexual sadism and anti-social personality disorder. Siegel noted that M.L.V.'s scores on the actuarial tests placed him in a group of individuals who are at high risk to re-offend. Siegel wrote that in his opinion, if M.L.V. were released, "he would be at high risk to sexually re-offend and would have serious difficulty refraining from acting on his sexual impulses due to the combination of his personality organization and deviant arousal pattern."

On April 24, 2003, the Attorney General filed a petition in the Law Division seeking M.L.V.'s commitment pursuant to the SVPA and sought a temporary order of commitment pursuant to N.J.S.A. 30:4-27.28. On April 29, 2003, the judge entered an order finding that there was probable cause to believe that M.LO.V. is a sexually violent predator in need of commitment and directing his temporary commitment at the Special Treatment Unit (STU) pending a final hearing. On April 30, 2003, the Parole Board vacated the administrative hold. On June 6, 2003, M.L.V. was transferred to the STU.

M.L.V. v. New Jersey State Parole Bd., 2006 WL 3007385 at *1-3 (N.J. Super. Ct. App. Div. Oct. 24, 2006) (footnote omitted).

B.   Procedural History

Petitioner appealed the Parole Board's placement of an administrative hold on his release, and the decision by the Adult Diagnostic Treatment Center (ADTC) referring him to be screened for civil commitment under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to 27.38, to the Superior Court of New Jersey, Appellate Division, which affirmed the administrative actions.  M.L.V. v. New Jersey State Parole Bd., 2006 WL 3007385 (N.J. Super. App.Div. Oct. 24, 2006).  The Supreme Court of New Jersey denied certification.  M.L.V. v. New Jersey State Parole Bd., 290 N.J. 255 (Mar. 16, 2007).

Petitioner also appealed the temporary and final orders of commitment entered by the Superior Court of New Jersey, Law Division.  The Appellate Division also affirmed the orders of commitment.  In re Civil Commitment of M.L.V., 388 N.J. Super. 454 (N.J. Super. Ct. App. Div. Oct. 24, 2006).  The Supreme Court of New Jersey denied certification.  In re Civil Commitment of M.L.V., 290 N.J. 255 (Mar. 16, 2007).

This Petition followed.  Here, Petitioner asserts the following claims for relief:

> A.   Ground One: Petitioner was serving an Active Sentence under N.J.S.A. Title 2A. ...   Petitioner was

6

serving an active sentence under Title 2A and sentence was illegally terminated and civilly committed as an SVP without a showing of probable cause as to why criminal sentence and Parole was interrupted by an Order for Indefinite Civil Commitment.

B.   Ground Two: Petitioner Parole supervision under Title 2A should be continued. ...  Petitioner was on Parole Supervision under title 2A, which was violated for a technically non sexual related violation.  It was determined that petitioner's behavior was not related to any emotional or behavior problem as a Sex Offender and Parole was continued.

C.   Ground Three: Petitioner's Confinement at the STU is unlawful. ...  The State of New Jersey has not shown cause for Petitioner's confinement at the S.T.U., in light of Expert reports that his Parole Supervision should be continued, which results in a violation of substantive due process of law and a massive curtailment of liberty.

D.   Ground Four: Petitioner's Confinement Breaches a Binding Contract between Petitioner & Parole. ...  On January 22, 2003, Petitioner's Parole was reinstated.  April 01, Petitioner and New Jersey State Parole Board entered a Binding Contract that the Parole Board would release Petitioner and Petitioner would report to District #11 Parole Office on a basis and obey all State and Parole Rule & laws.

E.   Ground Five: New Jersey SVP Statute does not call for civil commitment of parolee. ...  New Jersey enacted a statute authorizing the civil commitment of a person convicted of a sexually violent offense.  The statute is vague, in that it does not call for commitment of a person granted parole, only a person and a reason for denial of parole and within 90 days of maximum term of incarceration.  At time of parole and his commitment to STU, Petitioner was still serving a criminal sentence and in fact, had 3-1/2 years remaining on the criminal sentence.  All in violation of his Constitutional right to his already awarded release on parole.

(Petition, ¶ 12.)[2]

Petitioner was notified of the consequences of filing a § 2254 habeas petition, pursuant to Mason v. Myers, 208 F.3d 414 (3d Cir. 2000). See CM/ECF Docket Entry No. 2. As Petitioner made no response to the Mason notice, Respondents were ordered to respond to the Petition as filed. See CM/ECF Docket Entry No. 5. Respondents filed a response to the Petition on March 7, 2008.

On April 4, 2008, after Respondents had responded to the Petition, Petitioner submitted an Application [CM/ECF Docket Entry Nos. 11, 12] for Extension of Time, wherein he requested an extension of time to notify all parties as to "mistakes" discovered on the Petition (hereinafter referred to as "Supplemental Application"). Specifically, Petitioner explained that:

> Petitioner is not seeking review by this court of his final commitment hearing. He is seeking review by this court of the Administrative Decisions (Micky L. Vanderpool vs. New Jersey State Parole Board, Docket No: A 3859-03T2) made prior to his actual commitment. The State filed their answer to the final commitment hearing on March 07, 2008. (State did not respond to the administrative appeal which is the appeal petitioner is seeking review of). If this Court agrees with Petitioner of his constitutional challenges in his administrative appeal would make the Commitment non and void.

---

[2] Petitioner also moved to expand the record. However, Petitioner failed to state what evidence he wished to add to the record or the necessity for such evidence. Accordingly, Petitioner's motion to expand the record is hereby denied.

(Supplemental Application, ¶ 5.) Because Petitioner has thus indicated that he "is not seeking review by the court of his final commitment hearing," all claims challenging the final order of commitment will be dismissed without prejudice.

The Court has closely reviewed Petitioner's claims and finds that each claim raised by Petitioner in his original petition does, in fact, challenge Petitioner's custody pursuant to the final order of commitment. For instance, the crux of Petitioner's first, second, and fifth asserted grounds for relief is that his commitment was improper because a decision had been made by the State Parole Board to continue his parole. Petitioner's third asserted ground for relief is that there was not sufficient evidence to sustain the commitment, in light of expert reports that his parole supervision should be continued. Similarly, Petitioner's fourth asserted ground for relief is that his commitment violated a binding contract for the continuation for his parole. Because each of the foregoing claims challenge Petitioner's custody pursuant to the final order of commitment, and given Petitioner's notification that he is specifically "<u>not</u> seeking review by the court of his final commitment hearing," the instant Petition is hereby dismissed, in its entirety, without prejudice. (Supplemental Application ¶ 5)(emphasis added).

As this Court cannot order Respondents to respond to claims not made in the original Petition, namely any claims challenging

9

the administrative decisions to place an administrative hold on Petitioner's parole release and to refer him for screening for civil commitment as a sexually violent predator, this Court will construe the Supplemental Application as a request pursuant to Rule 15 of the Federal Rules of Civil Procedure for leave to file an amended petition challenging those administrative decisions. See, e.g., Mayle v. Felix, 545 U.S. 644 (2005).  Respondents have not answered with respect to the Supplemental Application.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney Gen., 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.

Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course before being served with a responsive pleading.  Where, as here, a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice requires."  Fed.R.Civ.P. 15(a)(2).  In accordance with the admonition that leave to amend should be freely given, the Supreme Court has instructed the lower courts as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, under prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, Petitioner seeks to amend his petition to challenge an administrative hold order pursuant to which he was confined

11

between April 2, 2003, and April 29, 2003, when a temporary commitment order was issued. Petitioner is no longer confined pursuant to that administrative hold order or the temporary commitment order. At the time this Petition was filed, through to the present day, Petitioner has been confined pursuant to a final order of commitment entered on January 6, 2004, and any order entered in a subsequent review hearing. The validity of the confinement Petitioner experienced pursuant to the administrative hold order in no way affects the validity of his present confinement pursuant to a final order of commitment under the Sexually Violent Predator Act.[3] This Court lacks jurisdiction under § 2254 to determine the validity of confinement that was complete at the time the Petition was filed and that has no continuing consequences. Accordingly, the requested amendment would be futile.[4] Petitioner's application for an extension of time to amend the Petition is, therefore, denied.

---

[3] See, e.g., In re Civil Commitment of M.L.V., 388 N.J.Super. at 462-65 (as a matter of state law, Attorney General may seek commitment, under SVPA, of a person who has been released on parole).

[4] There is no indication that the claim Petitioner seeks to assert would be subject to review under the doctrine which permits litigation of claims that are "capable of repetition yet evading review." See Lane v. Williams, 455 U.S. 624, 633-34 (1982). Moreover, because the amendment would be futile, this Court need not determine whether it would be timely under the relation-back provision of Rule 15(c)(1)(B). See generally Mayle v. Felix, 545 U.S. 644 (2005).

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court was correct in its procedural ruling. Accordingly, no certificate of appealability shall issue.

13

V.  CONCLUSION

For the reasons set forth above, the Petition will be dismissed and the request for an extension of time to amend will be denied.  An appropriate order follows.


    /s/ Jose L. Linares
Jose L. Linares
United States District Judge

Dated: July 10, 2008

14